Good morning, everyone. The first argued case this morning is number 19-2108, St. Jude Medical, LLC v. Snyders Heart Valve, LLC. Mr. O'Quinn. Thank you, Judge Newman, and may it please the Court, John O'Quinn on behalf of St. Jude. Although the Board properly invalidated some claims of the 7-8-2 patent, it committed three series of errors that require remand, if not outright reversal as to other claims. I'd like to briefly address Bezler's anticipation of Claim 28 and then turn to anticipation by Leonhardt and then Bezler. Bezler discloses the elongated manipulator of Claim 28, and the Board's decision to the contrary is both substantively and procedurally flawed. Mr. O'Quinn. Thank you. Mr. O'Quinn, can I ask you this question? This is Judge Toronto. I'm trying to understand, maybe you can clarify, how this argument relates to the cross-appeal argument that challenges the finding by the Board that Bezler teaches, among other things, leaving the native valve in place. Here's, I guess, a very particular question. Assume, I know you disagree, but assume for a moment that I were to think that Snyder's is right about its challenge to the Board on that, so that Bezler does not teach the element of leaving the valve in place. At that point, for anticipation purposes as to Claim 28, does the manipulator issue drop away? So, Judge Toronto, two points. First, I think if you were to agree with Snyder's as to the claim construction issue, vis-à-vis size and shape for insertion in a position, I think that that would not result in a decision that there can be no anticipation. I think at most that would result in a remand for the Board to consider whether there could still be anticipation because, among other reasons, if you look at the 782 patent and the sizes it discloses, it's between 2 and 3 centimeters or 3 and 5 centimeters, as you can see at Appendix 108, whereas Bezler's size is only from 1.5 to 3.5 centimeters and preferably between 1 and 3 quarters and 3, as you can see at Appendix 1373.  It's size and shape for insertion for a much larger space. So I think it would just result in a remand, not a reversal, and that would make this issue still a live issue on anticipation vis-à-vis the manipulator because this goes to a separate claim limitation, separate apart from those limitations relating to the valve itself with respect to Claim 28. But if you obviously disagreed and thought that Snyder's was entitled to a reversal and a holding, despite the fact that I think there are disputed fact issues, then it would effectively move this issue. And then what would be left then on Claim 28 would be the obviousness? Well, there would be two things on Claim 28. There would be obviousness and there would also be anticipation by Leonhardt. The arguments that they've made on their cross-appeal about size and shape do not apply in the proceeding, the 705 proceeding, involving the Leonhardt reference. The arguments there that we would still be entitled for a remand for the Board to consider anticipation by Leonhardt would still be active for the Board on remand if the Court agreed with us on Leonhardt. So with that, let me just very briefly say that vis-à-vis – I'm sorry, I said 705 proceeding, I meant the 105 proceeding. But let me just very briefly say that St. Jude presented uncontroverted evidence at Appendix 3684 that the proximal end of the catheter is, quote, used to position the distal holder. In other words, one end of the catheter is used to position the other end. And that is true whether or not the catheter is also threaded over a guide wire. Indeed, Snyder's never suggested in the proceedings below that Bezler somehow lacked a manipulator simply because Bezler can use a guide wire. And with good reason. The implantation instruments of the 782 patent and Bezler are, for all practical purposes, the same. The 782 patent describes the same features, including an optional guide wire at Appendix 109 explaining that the manipulator is pushed or pulled over the guide wire. And nothing in Bezler suggests that a guide wire is mutually exclusive. Mr. O'Quinn, did you make these arguments in your petition? We did, Judge O'Malley. You can see at Appendix 2906 and referencing, among other things, referencing Dr. Dossey's declaration at Appendix 3684. But the point that the other end of the catheter, and that's what you're talking about, it's a long, flexible tube. One end is used to manipulate the other. And the point that one end of the catheter was the manipulator of the other end was made in the petition at 2906. Yet the Board decided, without any argument from Snyder, and without raising the issue at the oral hearing, that just because Bezler disclosed a guide wire, that that meant that it did not disclose that one end of the catheter could manipulate the other. So that's not supported by substantial evidence. At a minimum, it requires a remand. When you look at Bezler on its face, I think that it requires an outright reversal as to that issue. And at a minimum, what the Board did here is exactly what this Court said it can't do in cases like Dell, SAS, Nuvasiv, and Magnum Oil. But unless the Court has further questions on this, let me turn to anticipation by Leonhardt, which, as I said, is not affected by the cross-appeal. So turning to Leonhardt, the Board erred in its treatment of the ban limitations, reading in a linked dimension, nowhere contemplated in the claims or specifications. Quite the opposite. Under the broadest reasonable interpretation, it is simply not reasonable. Let me just pose the following and ask you to address it. You proposed in your claim construction circular strip or ring. The Board said circular is a little bit too limiting because while the thing has to go around, it doesn't have to be circular. It can be ovate. So it said closed strip or ring. What's wrong with saying it is plain on the face of use of words like strip or ring that there's uncertainty, not lack of restriction, but uncertainty about the length of this thing, which ordinarily we would call width, but in patent terms it's the length, how extended it is rather than the circumference. And in the face of a plain uncertainty about where a strip and ring gets too long to be considered that, that you were effectively acknowledging that what was left was a skilled artisan application of that facially uncertain term. And then there was substantial evidence for the Board to apply the facially uncertain term and it wasn't changing the claim construction. Well, just to run through a couple of points. I think first the Board itself, I think, recognized that this really ultimately is an issue vis-à-vis claim construction. And indeed the Board in commenting on Snyder's argument at Appendix 13  seemingly cast doubt on petitioner's construction. And it may be that there are some issues where you reach a point where it is as defined as it can be for purposes of the patent, but the Board certainly didn't come to that conclusion here. And there's nothing about the term... No, but Mr. O'Quinn, that cite though to Appendix 13, the Board wasn't saying that it was adopting a different construction. It was saying that you were attempting to adopt a different construction and it adopted the one you proposed, but then it applied that construction to the reference in front of it and found, as a matter of fact, that it didn't satisfy the construction. Isn't that right? Well, two points, Judge O'Malley. Well, not quite, Judge O'Malley. I think first what the Board was commenting on was Snyder's arguments on the facts. Snyder's was not itself offering any type of claim construction. The claim construction that we argued was the claim construction that Snyder's had offered in the district court proceeding. And in the PTAB, Snyder's was trying to tack in the opposite direction. It didn't offer a claim construction as such. And the Board commented that its argument on the facts, that's what it's saying at page 13, seemingly cast doubt on the construction that we had offered in front of the PTAB, that is, the strip or ring construction. And so this Court, of course, has recognized that in cases like Corning v. Fast Felt, that when the Board requires more than what its explicit construction requires, that is implicitly adopting a new construction, and it's reviewed de novo. And that's exactly here, what happened here. The Board adopted an express construction, generally referring to the shape of a closed strip or ring, but then it added more to it. It says it has to be a particular length, or it can't be more than some length, some undefined length. Is it your view, Mr. O'Quinn, that every time a tribunal explains its reasoning for why it doesn't, as a matter of fact, find that something meets a claim construction, that it has somehow altered the claim construction? Well, no, Judge O'Malley. It's just a question of whether or not the explanation shows that it has added something beyond what the express construction required. And that was the concern expressed in cases like, as I said, INRI Abbott diabetes, and Google versus Lee, where the court found that the Board had committed plain legal error by importing an unrecited limitation in the process of evaluating the patentability. Well, basically, but the Board just said it's not a ring. I mean, look at it, and as a matter of fact, we look at it, and we don't think it's a ring or a band. The construction is not limited to a ring. It refers to the shape of a closed strip or a ring, and whether or not something is a strip doesn't limit what we're referring to here as the length dimension. Indeed, when somebody refers to a narrow strip of land, that's not redundant. And here, fundamentally, the dispute is about whether a band must be limited in its length, and that is, quintessentially, an issue of claim construction. It goes to what the term band actually means. And in this case, you know, despite the specification, which says a band can be, quote, substantially cylindrical, the Board imported a length limitation. Mr. O'Quinn, can I just ask you a factual question? Does anything in the 782 patent tell us, or anything in the record tell us, the rough overall length of this valve and stent structure? Judge Toronto, I don't know that there's anything in the patent that does so numerically, but I think that if you refer, for example, to figure six of the patent, Right, that's exactly what I'm thinking about. That's where the word length comes in, and it contemplates for one of the two bands a length that might be 12 centimeters, about five inches. That actually prompted my question. How does that compare to the overall structure? Yeah, and what I think you see described is my understanding of how this technology works, but I don't know that there's a specific measurement anywhere in the 782 patent itself, is that the larger band here extends most of the length of the stent structure. I mean, part of the difference between the, which I think, you know, puts the lie to the idea that the band has to be thin. I mean, you know, at least as depicted in the drawing, there's nothing about dimension L that is short as compared to, it may not be as long as the entire structure, but there's nothing about it that's short compared to the structure. And I think that there's just a difference in the way that Leonhardt and the 782 are structured. The 782, as you can see, has sort of the dome appearance coming out from the end, whereas, you know, Leonhardt, the valve is in the middle between two more or less circular stent constructions, and the graph material extends, you know, can extend without, you know, essentially flapping over part of the structure the way that it would if you potentially extended it out the way that the 782 is drawn. I realize that I'm into my rebuttal time. Well, no, we'll save your rebuttal. Let me ask the panel before we turn to Mr. Antonelli. Do you have any more questions for Mr. O'Quinn at this stage in the argument? No. All right. Good. Then we'll hear on behalf of Dr. Sniders, Mr. Antonelli. This is Matt Antonelli for Sniders. Good morning, and may it please the court. The board's decision that Leonhardt's graph does not qualify as a band, that decision should be affirmed because it was based on St. Jude's own construction, which required a band to be shaped like a clothes strip or a ring. And despite St. Jude's arguments to the contrary, which I just heard my friend make again, it's clear that those words, bands, clothes strip, ring, clearly exclude things that are too long to qualify for those. And so the idea that the only reason why St. Jude lost was because there was this additional implicit new construction that brought in this requirement that it can't be too long for the first time is simply false. Well, what's your response to the last point, which is how long is the band in the patent itself? So I think that the bands that are disclosed in the patents themselves obviously are not too long to qualify as bands. But that issue of where that line is drawn, St. Jude is the one who proposed the construction and said that level of detail is something that's left up to the fact finder to determine. Can you tell me, I don't remember that this point about figure six, column nine or something where the alternative two band model is shown and some numerical estimates are given. I don't remember seeing anything in St. Jude's presentation, at least in this court, that relied on those numbers. None of that was discussed before the board and none of it was discussed in any of the papers before this court. There's a second independent reason, and in some ways much simpler reason, why the board's determination with respect to the Lienhardt anticipation argument should be affirmed. And that is that all of these claims not only require a band, but they also require the band to limit spacing. Yeah, I've noticed that in your argument. But all the board said was really it doesn't disclose a band much less a band that limits spacing. And I don't really understand, you know, the board didn't explain itself at that point. So I don't think St. Jude has challenged the board's determination as not being sufficiently explained. All St. Jude has argued here is that what we say the board found, the board didn't really find. Can you correct my understanding? My understanding was that where the board was discussing that, and I don't have it in front of me, it was noting that there were two alleged bands in Lienhardt. And as to one, there's no reason to think it didn't really qualify for one reason. And as to the other, which I think was maybe the sleeve, it said it didn't qualify because it wasn't a ring. But the general statement that St. Jude didn't show that there was a band, let alone one that constrained is easily understood as involving only the first of the two alternative alleged bands, not the second. That's the argument that St. Jude makes in the yellow brief at pages 16 and 17 and says that the board's finding only applies to their first theory, not their second theory. They admit that it applies to the second theory, that the board indeed found that that one doesn't limit spacing. They say it doesn't apply to the first theory. And I think that's plainly wrong in view of what the board actually said. So in appendix 22, this is a quote, we determine that neither Lienhardt's cylindrical portions nor its graph 24 are a band, let alone a band that limits spacing between adjacent peripheral anchors. And I don't think there's any way to read that sentence as anything other than a conclusion about both of St. Jude's theories. And it would be one thing if St. Jude was coming in and saying, well, there was no basis for that, that's wrong, it wasn't adequately explained. None of those arguments have been presented. The sole argument St. Jude has made on this point in its response brief is that it says that that's not what the board ruled. Well, that's the board's ruling, we submit, and it's in the court's order. Let me turn to the manipulator argument. And this is one where the most important thing I think is to focus on what St. Jude actually pointed to and what it actually said before the board versus what it's now arguing to this court. Before you get to that, can you explain whether you agree or disagree with Mr. O'Quinn about whether, if you are right about your cross-appeal issue on Bessler and the retention of the native valve, that whether this issue has to be reached? So I think you're referring to our cross-appointment on the argument that the size and shape claim construction. And on that point, if we win, I disagree with my friend. This doesn't require a remand. And the reason it doesn't require a remand and should result in an outright reversal is that this claim construction was at issue from the very beginning. This may be ill-formulated, in which case I'll drop it and figure it out later. 28, like 1, requires and it raises the same issue about leaving the valve or not leaving the valve. If you're right about how Bessler does not teach leaving the native valve, then for anticipation, is there any remaining issue? And therefore, since this manipulator issue is being raised, as I understand it, solely on the question of anticipation, does your cross-appeal obviate the need to consider this manipulator question? I think the confusion is that the issue about whether the valve element will be retained, I think that's one of St. Jude's appellate points that we're opposing on this obviousness theory. Why don't you just proceed with your argument, and then I'll think about this offline. Thanks. Thank you, Your Honor. What I wanted to point out with respect to the manipulator issue is what St. Jude actually argued in front of the Patent Office. And there's only two things, and we heard counsel cite both of them, Appendix 2906, which is their petition, and then the evidence they cite, including Dr. Dossey's declaration at Appendix 3684. Well, if you look at what they actually said at Appendix 2906, it's a single sentence, and all it is is a conclusory assertion that the proximal end of the catheter is the manipulator, which is used to position the digital holder. And then they cite certain portions of Bessler. Now, I would have thought— Just to be literally on the same page, is this the finally Bessler-described sentence, or something else? It's the sentence in Appendix 2906 that says the proximal end of the catheter, element 91, is the manipulator, which is used to position the digital holder. Okay, just above that. Okay. And that's all they say on this point. I think the next sentence has to do with the ejector. Why is that not enough? It's not enough because that's just an assertion, and if you look at the evidence that they cited, which the board did, it doesn't disclose that. It doesn't say anything about the proximal end of the catheter, and the only thing it says about positioning the digital holder talks about the guide wire, is used to do that. And so the board, on the evidence before it, correctly concluded that St. Jude had failed to show that Bessler discloses what it says it discloses, and then it also noted the only thing that talks about that is the guide wire, and that's not the claim to manipulator. St. Jude was relying on the catheter to be the manipulator. The problem is, and we have many times said that the board, once given a reference, is entitled to examine the reference as a whole once the parties have joined issue with respect to what that reference teaches. So do you want us to say, well, the board can do it, but it doesn't have to do it, if the petitioner doesn't give it enough information? Certainly the board is not obligated to go look at other portions of Bessler, and in fact, if it went and looked at, there are situations where if it did do that, you might run into serious due process problems, and you might run into serious problems with the Supreme Court precedent holding that it is the petitioner who defines the petition and so forth. But that simply didn't happen in this case. There's no evidence that the board went and looked at other portions of Bessler, and in any event, there's a waiver issue here. Whatever the board did, St. Jude can't now come and make arguments that it didn't make before. The other thing is, St. Jude points to, oh, well, we got Dr. Dossey's declaration. Thank you. Dr. Dossey's declaration of 3684, and they say all kinds of things are supposedly disclosed by that paragraph of Dr. Dossey's declaration, paragraph 79. So, for example, in the blue brief at pages 44 and 45, St. Jude asserts that it talks about positioning and pulling and retrieving and all kinds of stuff. That's simply untrue. The only thing that's in Dr. Dossey's declaration in that paragraph that goes to this issue is the exact same sentence that's in the petition. And the citation of the exact same evidence, of course, they don't cite except for the citation of Dr. Dossey's declaration. That's it. And so the idea that Dr. Dossey's declaration somehow was a bunch of evidence that saves the day is simply false. Can I just ask, in Bessler, how does the distal end get to the right location? I don't know the answer to that, but I don't think there's any teaching that the proximal end does that. And, you know, St. Jude makes an argument at page 24 of the yellow brief that, well, common sense says that it would have to be pushing the proximal end. I mean, when I think about pushing a tube into something, it doesn't seem, especially a flexible one, it doesn't seem at all a common sense idea that you would push away from the end of the flexible thing. Maybe you would do that for something that was more rigid. And so it's certainly possible you could do it in other ways and the proximal end would not be used. So I'm not sure that there's any particular teaching in Bessler that says anything about that, but it certainly doesn't say anything about using the proximal end to do it. I know I'm in my rebuttal time, but let me touch briefly on our appellate points. We've talked a little bit about size and shape already. I want to point out, with respect to our second claim construction argument, the requirement that the flexible valve element be attached to a particular component of the artificial valve, and not only that, but to a particular portion of that particular component, we think the board's decision is wrong allowing for indirect attachment, and that requires reversal. But at a minimum, there's a very important concession that St. Jude made in its briefing where it said, look, we agree that any indirect attachment is not sufficient and you really have to do an inquiry into the nature of exactly the degree of indirectness or directness in order to answer this question. And that's not what happened in front of the board. The board just said as a general principle, indirect attachment is enough, therefore we win, therefore Sniders loses. And on that point, we're entitled, based on that concession, to at least a remand. With that being said, I'd like to reserve my remaining time for rebuttal, please. Okay. Thank you. We'll hear from Mr. O'Quinn, and we've run over for three minutes, so let's enlarge Mr. O'Quinn's time to six minutes for rebuttal. Thank you, Judge Newman. Okay. Judge Toronto, coming back to a question that you asked, we discussed the length of the second embodiment of the 782 patent at pages 30-31 of our opening brief. And then with respect to their argument that there's an alternative ground to resolve the Leonhard issue, the board didn't address whether the graph material served to constrict or to limit the expansion. It acknowledged our argument at page appendix 20, but it doesn't purport to reject it. And Judge Toronto, you also asked, how does the distal end get to the right location? And I think that if you look at Bezler column four, the bottom of column four, it tells you how they manipulate it into position, and all of that is without the guide wire, because it's not until column five, line 13, that it says that the guide wire is an optional alternative. And so I think it does it exactly the same way. The instruments look exactly the same. As the 782 patent describes in appendix 109, column eight, lines 34-39, it says that even if you're using a guide wire, the manipulator can be pushed or pulled over it. It's not like the manipulator is a zipline and it can just fly down. It still has to be – it's not like the guideline is a zipline. The manipulator still has to be pushed or pulled over it. Now, I want to come back to – Can I just double check on something? Yes. As I understand it, the essence of the argument made by the other side is that you're just assuming the use of the proximal end to advance the entire catheter and, therefore, the distal end, and the words in the passages of Bessler that you cited don't say that. Just to double check, are there other words in Bessler that do say that? Well, I think if you look, for example, at column four, lines 58, it says that it includes the flexible catheter, which may be inserted into a vessel of the patient and moved within that vessel. And then you have the uncontroverted testimony of our expert, Dr. Dossi, that says that the proximal end of the catheter is the manipulator. Again, something that they did not contest, and the board didn't raise any questions about, and the guidewire came completely out of nowhere in the board's final written decision, which goes to our procedural objections above and beyond the substantive objections. But that, I think, encapsulates the issue. If you have more questions on that, I'm happy to answer them, but I also wanted to come back to the question that you had asked about if you agree with them about size and shape, a point that my colleague didn't really argue. I'm happy to answer questions you might have about that, but I also don't want to open the door on things. He didn't really make any arguments about their claim construction. But even if you assume that their argument is right, it is a claim construction argument, and you would still have to remand for factual findings on whether Bezler's stent is, in fact, not sized and shaped to fit, even if cusps are removed. That's an additional fact question that the board did not reach. Now, they assume, they have a statement from their expert that Bezler must be larger, because the cusps are still there, that it would somehow make a difference. But there is evidence to the contrary, as I pointed out, at Appendix 108, Column 5, starting around Line 55 of the patent at issue, you see the sizes of the expanded stents of the 782, which, if anything, are larger than what's disclosed in Appendix 1373, which is the size of the stent of Bezler, as you can see at Column 6, Line 15. So I ultimately don't know what they hope to accomplish with their claim construction argument other than a remand. I think their claim construction argument is wrong for the reasons that the board gave, and I'm happy to answer questions about that if that is of concern to the panel or to address any of the other issues that my colleague addressed or that the court may have. Okay. Any more questions for Mr. O'Quinn? No. No, thank you. All right. Thank you, Mr. O'Quinn. We'll hear from Mr. Andinelli, and you have your full rebuttal time. Thank you, Your Honor. So let me talk about the size and shape of the claim construction. And I think I answered the question previously, but I do believe that if we went on that, we're entitled to reversal. But on the merits of that claim construction issue, one thing I do want to be clear is that this is not a situation where, as St. Jude characterized it, where we're saying, look, every embodiment or every preferred embodiment in the patent is between those custs, and therefore that means that you should construe the claims to be limited to that. That's not the argument we're presenting to the court today. What we're relying on is the fact that Dr. Snyder's patent, the claims specifically include expressed language requiring the plurality of custs to be there between the upstream and downstream region. And then when the claims say that the frame must be sized and shaped for insertion in that region, it's referring to the antecedent basis in the preamble, that it's the region that's defined. Again, counsel, if we agree with that, what is your response to Mr. O'Quinn's argument that we would still have to remand for purposes of determining what that size and shape would have to be? My response to that is that there's really no point of a remand because St. Jude has never argued or put forward any evidence below that the claim is satisfied under our construction. And they have the opportunity to do so, but they decided to rest their argument below purely on the claim construction issue. So given that they never advanced that argument below, there is no entitlement to a remand on that point. What's the right document that we would look at for that? Would that be their reply in this is the 106 proceeding or what? Yes. So there was a reply, so they certainly had an opportunity to argue it there, and they didn't make that argument in the reply. And there's also, at the hearing itself, they had an opportunity to argue this, and there's no evidence that they made any argument there, and they did not. So because their argument was premised purely on the legal issue, we think we are entitled to an outright reversal on that. The last thing I'll touch on is the factual finding of the board that Bessler's cuff actually limits spacing, and that is a finding that was not supported by substantial evidence. And it's pretty interesting the sort of sequence of things that St. Jude goes through in the briefs on this. It's in the yellow brief at pages 49 to 50. They have the opportunity to point out the substantial evidence, and I submit they failed. First they say figure four. Well, that's just a figure, and it doesn't show in any way that there's tension on that cuff, that it's tight, and therefore that it would limit spacing, which is the theory that they advanced. So in response to that, they say, oh, well, Dr. Dawson talked about figure four, and he said a person of skill in the art would expect it to be tight. But that was just an assertion by Dr. Dawson. It was unsupported by any evidence, and it's not even quite clear what he meant by would expect it to be tight. And so the response to that is, no, no, no, Dr. Dawson actually had a basis for that, and it turns out what that basis is, according to St. Jude, was Snyder's infringement contentions from the district court litigation when we first filed suit several years ago. When we submitted contentions and we said, hey, there's a tissue skirt on the accused device, the device that St. Jude makes, and we contend that that meets the claim limitation that it limits spacing. Now, that's a contention that hopefully one day I will have the ability to prove at trial. But that's a contention that is still in dispute in the district court litigation. For St. Jude to say that at the end of the day that's our substantial evidence, some contention that we have about a different product that we will have to prove, has anything to do with whether the Besser valve is under their theory tight and therefore limits spacing, those two things are completely divorced. One doesn't have anything to do with the other. And that's, at bottom, what their entire argument was based on, and that's the post. That's where I finish. Okay. Thank you. Any more questions for Mr. Adanelli? No. No. Okay. Thank you. Thank you. Thank you to both counsels. The case is taken under submission.